12-1206-cv
*McGee v. Noah*


# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### AMENDED SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand fourteen.

PRESENT:

GUIDO CALABRESI,
JOSÉ A. CABRANES,
DEBRA ANN LIVINGSTON,
*Circuit Judges.*

_____

JAMES P. MCGEE,

     *Plaintiff-Appellant*,

        v.                                           No. 12-1206-cv

JOHN DOE, TOWN OF CARMEL POLICE OFFICER,

     *Defendant,*

JAMES DUNN, J. DUNN CONSTRUCTION CORP.,
ECTOR PEREZ GALINDO, TOWN OF CARMEL,
TOWN OF CARMEL POLICE DEPARTMENT,
CHRISTOPHER FOX, DET. ROBERT BAGNAROL,

LT. BRIAN KARST, SGT. JOHN (JACK) HARNEY, LT. MICHAEL CAZZARI, CHIEF MICHAEL R. JOHNSON, PUTNAM COUNTY DISTRICT ATTORNEY'S OFFICE, KEVIN WRIGHT, then-PUTNAM COUNTY DISTRICT ATTORNEY, ROBERT A. NOAH, PUTNAM COUNTY ASSISTANT DISTRICT ATTORNEY,

*Defendants-Appellees.*

_____

**FOR PLAINTIFF-APPELLANT:** LAUREN G. KLEIN, Law Office of Lauren G. Klein, Nantucket, MA.

**FOR APPELLEE GALINDO:** KIM PATRICIA BERG, Gould & Berg LLP, White Plains, NY.

**FOR APPELLEES TOWN OF CARMEL, TOWN OF CARMEL POLICE DEPARTMENT, FOX, BAGNAROL, KARST, HARNEY, CAZZARI, JOHNSON:** LINDA M. CRONIN, Cronin & Byczek, LLP, Lake Success, NY.

**FOR APPELLEES PUTNAM COUNTY DISTRICT ATTORNEY'S OFFICE, WRIGHT, NOAH:** DENISE M. COSSU (James A. Randazzo, *on the brief*), Gaines, Novick, Ponzini, Cossu & Venditti, LLP, White Plains, NY.

Appeal from (1) a February 22, 2012 Memorandum Decision and Order; (2) an April 16, 2013 Memorandum Opinion and Order; and (3) an April 29, 2013 Memorandum Opinion and Order, of the United States District Court for the Southern District of New York (Frederick P. Stamp, Jr., *Judge of the United States District Court for the Northern District of West Virginia, sitting by designation*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **VACATED IN PART**, as to the dismissal of claims against Dunn and against Town of Carmel Police Officers Fox, Bagnarol, Karst,

Cazzari, Harney, and Johnson; **VACATED IN PART**, as to the denial of leave to amend the complaint; **AFFIRMED IN PART**, as to the dismissal of claims against all other defendants, and the dismissal of the malicious prosecution claim, and **REMANDED** for further proceedings consistent with this Order.

## BACKGROUND

Appellant James P. McGee ("McGee") appeals the February 22, 2012 decision of the District Court granting motions to dismiss as to all defendants except James Dunn ("Dunn");[1] an April 16, 2013 decision denying McGee's motion for reargument, relief from judgment, or to amend the complaint; and an April 29, 2013 decision granting Dunn's motion to dismiss. McGee's complaint, dated July 6, 2009, alleged a conspiracy among, *inter alia*, Dunn, Dunn's employee Ector Perez Galindo ("Galindo"), Police Officers Fox, Bagnarol, Karst, Harney, Cazzari, and Johnson from the Town of Carmel Police Department ("the police officer defendants"), then-Putnam County District Attorney Kevin Wright ("Wright"), and Assistant District Attorney Robert A. Noah ("Noah"), to bring about the false arrest and malicious prosecution of McGee. We assume the parties' familiarity with the underlying facts and procedural history of the case.

## DISCUSSION

We review *de novo* an order granting a motion to dismiss for failure to state a claim under which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a complaint, we may consider all documents that a complaint incorporates by reference or relies heavily upon. *See Taveras v. UBS AG*, 708 F.3d 436, 442 (2d Cir. 2013). All reasonable inferences are drawn and viewed in the light most favorable to the plaintiff. *See Chase Group Alliance LLC v. City of New York Dept. of Finance*, 620 F.3d 146, 150 (2d Cir. 2010).

The complaint alleges only one cause of action, "[f]or a violation of [McGee's] Due Process rights through a conspiracy to bring about an arrest and prosecution based on false and misleading evidence and to engage in a malicious abuse of process."

To state a claim for a § 1983 conspiracy, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d

---

[1] Appellee James Dunn did not submit any brief in this appeal, nor was he represented at argument. Accordingly, we rely upon the briefing and oral arguments of the other appellees in reaching conclusions with respect to Dunn.

307, 324-25 (2d Cir. 2002). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Id.* at 325 (internal quotation marks omitted). "[T]he pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, [but] the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).

I. <u>Dismissal of Claims Against Galindo</u>

In its decision of February 22, 2012, the District Court dismissed McGee's claims against Galindo, finding, in part, that the complaint did not sufficiently plead that he conspired with state actors, as required for a conspiracy claim under § 1983.

Upon a *de novo* review of the complaint, and the documents referenced and incorporated therein, we agree with the District Court's conclusion that the complaint was insufficient in establishing that Galindo acted in concert with state actors as part of a scheme to falsely arrest and maliciously prosecute McGee. Accordingly, we affirm the dismissal of these claims.

II. <u>Dismissal of Claims Against Dunn</u>

In its decision of April 29, 2013, the District Court dismissed the claims against Dunn, finding that (1) the complaint did not sufficiently plead that Dunn conspired with a state actor; and (2) even if the complaint stated a claim for conspiracy, McGee failed to adequately plead the underlying constitutional violation of malicious prosecution; the District Court did not address the allegations of false arrest and other due process violations. We disagree.

First, we conclude that the complaint sufficiently pleaded that Dunn conspired with the police officer defendants and Assistant District Attorney Noah to bring about McGee's false arrest and malicious prosecution. In particular, we note that the complaint states that, after having "escorted" Galindo to the police station to swear out his complaint, Dunn "direct[ed]" Galindo's complaint, and did so in front of, and with the assistance of, defendant officers Fox and Harney. A26. Furthermore, the complaint states that ADA Noah met with Dunn numerous times "in which, on information and belief, they attempted together to find facts that would 'square' with Galindo's statements to the police, and with the events surrounding the contract disputes the McGees were having with Dunn." A35. The complaint goes on to state that Dunn provided Noah with various items of evidence, and that in his ten-month pursuit of this investigation and prosecution, Noah did not once interview Galindo. In conjunction with all of the other assertions in the complaint, we conclude that McGee sufficiently stated a claim against Dunn for § 1983 conspiracy.

However, we agree with the District Court's conclusion that McGee's underlying malicious prosecution claim is barred because the allegedly malicious prosecution had not terminated in

4

McGee's favor, as required by New York law. *See* Section V, *post*. Accordingly, we vacate the dismissal of McGee's claims against Dunn for § 1983 conspiracy to bring about his false arrest and other due process violations, but we affirm the District Court's dismissal of claims against Dunn predicated upon malicious prosecution.

As for the claim against J. Dunn Construction Corp., the District Court ruled that there were insufficient allegations in the complaint to sustain the claim against it. SPA41. McGee did not correct these deficiencies in his proposed amended complaint, nor did he challenge this holding on appeal. Accordingly, we deem this claim abandoned. *See Deep Woods Holdings, LLC v. Sav. Deposit Ins. Fund*, 745 F.3d 619, 623 (2d Cir. 2014).

III.     Dismissal of Claims Against the Police Defendants

The District Court dismissed McGee's complaint against the police officer defendants, finding that, because they had arguable probable cause to arrest McGee, their actions were subject to qualified immunity as a matter of law.[2] We disagree.

Qualified immunity shields police officers from damages claims against them in their personal capacities. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 127 (2d Cir. 1997). In the face of a § 1983 claim for false arrest, a police officer need only demonstrate "arguable probable cause," *see Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000), which applies "where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest." *Ricciuti*, 124 F.3d at 128. In determining whether there was arguable probable cause, we look at all of the facts that were available to the officer at the time of arrest. *Id.*

"[I]t is well established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez*, 202 F.3d at 634 (internal quotation marks omitted). However, the victim-informant must be credible, and can only be relied upon "absent circumstances that raise doubts as to the victim's veracity." *See Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997) (internal quotation marks omitted).

There are numerous cases in which we have held that qualified immunity shielded police officers who made arrests based primarily upon statements by informants, typically the putative victims. However, those cases are distinguishable from the instant case. For example, in *Martinez*,[3] we held that a supervisor Sergeant was immune from a false arrest claim by an off-duty police officer

---

[2] McGee also brought a claim against an unidentified officer, designated "John Doe" in the complaint. The District Court dismissed the claim against Doe both because it found the claim to have been insufficiently alleged in the complaint, and because it found that McGee had not shown good cause for his failure to serve Doe. SPA36 n.10. McGee did not argue to the contrary in his opening brief, and thus he has waived this argument. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief.")

[3] In *Martinez*, the discussion was of whether the plaintiff, who had been arrested at the scene by the victim-officers, had been lawfully arrested, detained and charged by supervisor officers. The standard applied for determining qualified immunity was the same for all three claims.

who allegedly attacked two on-duty officers, because the Sergeant had arrived on the scene, observed injuries to two officers, and "was told by all officers present that [plaintiff] was the aggressor." 202 F.3d at 635. We also held that a charging officer at the station house was immune, because he "heard consistent versions of the events from at least three eyewitnesses," who were all police officers, while only one account – that of the plaintiff's girlfriend – differed. *Id.*; *see also Lee*, 136 F.3d at 104 (finding arguable probable cause where officer arrested plaintiff husband for domestic abuse of his wife based upon the wife's statement, but only after conferring with a physician who examined the wife and advised that although she seemed disoriented, intoxicated, or mentally impaired, she could accurately relate the facts about her alleged assault at the hands of her husband); *Singer*, 63 F.3d at 119 (holding that officer had qualified immunity from § 1983 action brought by arrestee, because officer had probable cause to arrest based on statements of a witness store clerk, who signed a criminal information and deposition detailing the theft and establishing "each of the elements of the crime of larceny").

By contrast, here, McGee has alleged facts that, if true, indicate that any reasonably competent officer should have known that Galindo was an unreliable victim-informant whose statement, under the circumstances, could not form the sole basis for an arrest. As an initial matter, even setting aside Galindo's connection to Dunn, the complaint asserts that "Galindo speaks little English" and that "[n]o interpreter was present" when he wrote and swore out the complaint. A25-26. Perhaps as a result, Galindo's statement itself is brief, sparsely detailed, and vague on essential facts, such as when exactly the alleged call took place and what court proceeding was in progress when Galindo was allegedly intimidated by McGee.[4] Additionally, someone—presumably one of the defendant officers—filled in the description of the alleged offense, writing that witness tampering occurs when someone threatens another while "knowing that [the other] person is or is about to be called as a witness in an action or proceeding"; but the only information Galindo provided to the police was that he had no knowledge of being called as a witness. A124.

We must consider in combination the facial weaknesses of Galindo's statement with all of the other information possessed by the police defendants before making the arrest. "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119.

---

[4] The factual basis that Galindo gave to support his criminal complaint reads as follows: "McGee calls me around 11 pm I think He try to scareme If I got to the court to testifying Because He ask me if I was citizen or Legal in usa." A124.

Additionally, Galindo gave a voluntary witness statement, which is reproduced here without any alteration except for the insertion of periods: "Mister McGee callsme one night around 11 pm[.] I was sleeping already so I wake up to answer the call when soon I said Hallo. He said Hi Ector this mister McGee[.] I said Hi How I can Help you[.] He said you know that Jamy is using your name. I said No I Don't know[.] He said yes he is Because if you go to the court the go to ask you if you are legal in usa. I said one moment the First thing this is not good time to call the second I have enough problems and this is not my bussiness[.] this problem is you and Jimy OK[.] He said Just I want to let you know you can get troble[.] I said you know what letme alone OK and Hand up." A123.

However, here, the facts in the complaint suggest that Galindo's reliability or veracity should have been questionable to the police. First, the complaint alleges that Galindo's statement to the police was offered "at Dunn's direction." A26. The complaint also states that Dunn had discussed his private dispute with McGee with "members of the Carmel Police Department," A22, that Sgt. Detective Harney was Dunn's "lifelong friend," A21, and that Dunn and Galindo had done home improvement work for Harney and "many other members of" the police department. A21-22. It asserts that Harney was present when Galindo filed his criminal complaint, and "'help[ed]'" Galindo and Dunn through the process. A26.

If the complaint is taken at face value, then the police defendants observed Dunn *directing* Galindo in offering his statement. Additionally, some of the police defendants had longstanding relationships with Dunn and Galindo, and some of them may have known of Dunn's ongoing dispute with McGee. *See Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994) (noting that defendant police officers "knew that the [victim-informant] tenants were being evicted, and the significant chance that they bore a grudge against their landlords would have made it unreasonable—and therefore unconstitutional—to arrest the landlords on the tenants' mere say-so. Having received a report of questionable reliability, the police needed to investigate" before relying on that statement for an arrest).

Weighing these facts together with Galindo's statement, upon which the arrest was predicated, we conclude that the District Court erred in determining, at this early stage, that the police defendants were entitled to qualified immunity as a matter of law. *See Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006) ("A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but the defense faces a formidable hurdle when advanced on such a motion and is usually not successful." (internal alterations, quotation marks omitted)). Because the District Court rested its dismissal of claims against Police Officers Fox, Bagnarol, Karst, Cazzari, Harney, and Johnson entirely on qualified immunity grounds, we vacate the dismissal of those claims.[5]

IV.    Dismissal of Claims Against the Putnam County District Attorney's Office and Assistant District Attorneys Wright and Noah

The District Court dismissed the claims against Wright and Noah, finding in relevant part that they were functioning in their advocacy roles and thus protected by absolute immunity. McGee claims that, since there was no probable cause for the arrest, Wright and Noah were functioning in an investigatory role, and as such are not protected by the doctrine of absolute immunity.

We hold that Noah and Wright were protected by the doctrine of absolute immunity, and thus the claims against them were properly dismissed.[6]

_____

[5] The District Court dismissed claims against the Town of Carmel Police Department and the Town of Carmel, and McGee does not challenge that dismissal on appeal. Accordingly, we do not address them.

[6] The District Court stated that McGee withdrew his claim against the Putnam County District Attorney's Office during proceedings below, and McGee makes no attempt to revive this claim on appeal. Accordingly, we do not address it.

V.       Dismissal of the Malicious Prosecution Claim

The District Court dismissed the malicious prosecution claim because the allegedly malicious prosecution had not terminated in McGee's favor, as required by New York law.  We agree.  The prosecution against McGee terminated when, pursuant to NY CPL § 170.30(1)(a), the accusatory instrument was dismissed as facially insufficient to state a claim for witness tampering.  A55-56.  We have held that a dismissal under CPL § 170.30 for facial insufficiency is "not a decision on the merits, an essential element of a cause of action for malicious prosecution."  *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999); *see also MacFawn v. Kresler*, 666 N.E.2d 1359 (N.Y. 1996) (holding that action could not form the basis of a malicious prosecution claim where criminal information was dismissed as insufficient to support the charges, without prejudice, and the prosecutors did not amend or refile).

McGee relies upon *Smith-Hunter v. Harvey* in arguing that the prosecution terminated in his favor. 734 N.E.2d 750, 754 (N.Y. 2000).  In that case, Judge Judith Kaye further explained the holding of *MacFawn*, stating that it "simply held that a plaintiff in a malicious prosecution action must show, as a threshold matter, that the criminal proceeding was *finally* terminated," and that a dismissal, even one without prejudice, "qualifies as a final, favorable termination" if it constitutes "the formal abandonment of the proceedings by the public prosecutor." *Id.* (internal quotation marks omitted).  However, here there was no indication that the dismissal of the action against McGee, and the failure by the prosecution to re-file the claim, constituted a formal abandonment of the charges.  Hence, in the particular circumstances presented here, we affirm the dismissal of that claim.

VI.       Leave to Amend

We review a District Court's denial of leave to amend for "abuse of discretion."  *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  "'[A]buse of discretion' is a term of art, and is more properly understood to refer to occasions when a district court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *United States v. Ghailani*, 733 F.3d 29, 44 (2d Cir. 2013) (internal quotation marks and alteration omitted).  We have held that "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).  In determining whether parties were prejudiced, we note that "time, effort, and money" expended in litigation "do not arise to the substantial prejudice" that would justify denial of leave to amend. *Block v. First Blood Associates*, 988 F.2d 344, 351 (2d Cir. 1993) (internal quotation marks omitted).  That level of prejudice has been found where the delay prevented a party from timely bringing an action in

another forum, or where a party's bad faith failure to disclose that an issue had previously been the subject of another action led to unnecessary expenditure of time, effort, and resources. *Id.* at 350-51.

We have also found an "inordinate delay" where "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007); *see also Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (upholding the District Court's denial of leave to amend because the motion came "four years after [plaintiff] filed her original complaint and over three years after the close of discovery" and several months after the court had ruled on a summary judgment motion).

The District Court denied McGee leave to amend because it found that he did not "proffer[ ] a valid reason for his delay and neglect in filing his motion to amend," SPA70, and because the defendants were prejudiced by McGee's failure to attach his proposed amended complaint to his motion for leave to amend and his only attaching it to his reply memorandum in support of the motion. SPA73.

In the specific circumstances presented here, we conclude that McGee should be afforded an opportunity to amend his complaint to include additional facts and allegations against the remaining defendants. Here, discovery had been completely stayed and the case had not moved beyond the motion to dismiss stage. Additionally, while McGee only provided the actual proposed amended complaint with his reply memorandum in support of the motion to amend, thus preventing defendants from responding to it, the original motion contained a list of the facts and allegations that he planned to add to the complaint.

Furthermore, although considerable time had elapsed between the filing of the complaint and the request to amend, that was largely due to circumstances beyond McGee's control, including the resignation of the district judge to whom this case had originally been assigned, and the subsequent reassignment of this case to a visiting district judge. Almost immediately after the latter judge decided the motions to dismiss, on March 1, 2012, McGee requested extra time to file his motions for reargument, relief from judgment, and leave to amend, and he filed those motions on April 17, 2012.

We conclude that, in these circumstances, where there had been no discovery, where the time lapse is mostly attributable to circumstances beyond any party's control, and because we do not see significant prejudice to any party, McGee should be granted leave to amend his complaint.

However, upon reviewing the proposed amended complaint, we also conclude that the proposed changes with regard to all defendants except Dunn and the police officer defendants would not alter our decision to affirm the dismissal of claims against them, and hence any amendments of these claims would be futile. Accordingly, our decision should not be construed, on remand, to permit the reinstatement of claims against any party whose dismissal from this action we have affirmed in this order.

Furthermore, McGee sought to amend the complaint to add Putnam County as a party. A municipality may not be held liable under § 1983 solely on the basis of *respondeat superior*, but rather,

9

to establish municipal liability, "a plaintiff must show that that the violation of his constitutional rights resulted from a municipal custom or policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks omitted). Having reviewed the proposed amended complaint, we conclude that it fails to adequately plead that any violation of McGee's rights was a result of a municipal custom or policy, and hence, adding Putnam County as a party would be futile.

## CONCLUSION

We have considered the rest of McGee's claims and find them to be without merit. For the reasons stated above, we **VACATE** the judgment on the surviving claims against Dunn and against Town of Carmel Police Officers Fox, Bagnarol, Karst, Cazzari, Harney, and Johnson; **VACATE** as to the denial of leave to amend the complaint; **AFFIRM** as to the dismissal of claims against all other defendants, and the dismissal of the malicious prosecution claim; and **REMAND** to the District Court for proceedings consistent with this Order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

10